HARRY M. REDFIELD et ux., appellants, v. IOWA STATE HIGHWAY COMMISSION, appellee.

No. 49774.

(Reported in 99 N.W.2d 413)

NOVEMBER 17, 1959.
REHEARING DENIED JANUARY 15, 1960.

Robert E. Dreher, Charles F. Wennerstrum and George A. Wilson, all of Des Moines, for appellants.

Keith E. McWilliams and Mitchell & Beving, all of Des Moines, and James E. Thomson and C. J. Lyman, both of Ames, for appellee.

GARRETT, J.—In February 1956 plaintiffs-appellants purchased 97.2 acres of land near the north edge of Des Moines for contemplated development as a residential subdivision. In November 1957 the State Highway Commission filed notice of proceedings to condemn the north 77.2 acres of said land in connection with the construction of limited access interstate Highway No. 80. On December 10, 1957, the condemnation commission filed its report fixing plaintiffs' damages at $70,000. On December 26, 1957, the highway commission took possession of said condemned property and proceeded to complete the construction of said highway.

Within the proper time plaintiffs filed suit in the district court seeking damages in the amount of $198,925. The case was tried to a jury which gave plaintiffs a verdict for $60,000. They, being dissatisfied, have appealed to this court.

The land involved may be more particularly described as 97.2 acres abutting Merle Hay Road on the west, approximately one and one-fourth mile north of the intersection of Merle Hay Road and Douglas Avenue in Des Moines.

I. Appellants' first assigned error is that the trial court erred in excluding certified copies of certain deeds and a contract identified as Exhibits Nos. 14 to 22 inclusive in the cross-examination of appellee's witness Herman D. Froning, and striking the testimony on direct examination of appellants' witness Paul K. Ashby as to the price paid in a sale he used in forming his opinion. "Every instrument in writing affecting real estate * * *, which is acknowledged or proved and certified as required, may be read in evidence without further proof." Section 622.36, Code of Iowa, 1954. An authenticated copy of any duly recorded instrument is competent evidence when the original is shown to be lost or not within the control of the party wishing to use it. See section 622.37.

To support their claim that the excluded exhibits were admissible as a part of the cross-examination of appellee's witness Herman D. Froning, appellants cite: Watkins v. Wabash Railroad Co., 137 Iowa 441, 113 N.W. 924; Hubbell v. City of Des Moines, 166 Iowa 581, 147 N.W. 908; Winkelmans v. The Des Moines Northwestern Railway Co., 62 Iowa 11, 17 N.W. 82; Stotts v. Fairfield, 163 Iowa 726, 145 N.W. 61.

Froning, qualified as an expert on real-estate values in Polk County, and, as such expert, fixed the value of appellants' 97.2 acres at $66,000 before condemnation and the value of the 20 acres left after condemnation at $10,000.

Appellants' four witnesses testified to values as follows:

|  | Before | After | Difference |
|---|---|---|---|
| Redfield | $ 195,000 | $ 20,000 | $ 175,000 |
| Ashby | 179,500 | 20,000 | 159,500 |
| Holden | 143,000 | 20,000 | 123,000 |
| Neal | 169,750 | 20,000 | 149,750 |

Appellee's witnesses testified to values as follows:

|  | Before | After | Difference |
|---|---|---|---|
| Froning | $ 66,000 | $ 10,000 | $ 56,000 |
| Donahoe | 80,000 | 8,000 | 72,000 |
| Brandt | 76,050 | 11,550 | 64,500 |

It is enlightening to observe the extreme differences between the values placed on the subject property by the witnesses for the respective sides. All witnesses on value showed outstanding training and experience but when experts differ so widely on a proposition they profess to know all about, it lends force to appellants' claim that the actual records of sales of comparable properties from which the witnesses gained their knowledge are more reliable evidence than mere opinions of the experts.

Appellants, on cross-examination, questioned appellee's witness Froning about the properties described in the deeds and contract evidenced by the Exhibits 14 to 22 inclusive. He was asked if he considered these properties and the prices for which they sold in arriving at the valuation he placed on appellants' property. With the exception of four of the properties he said in substance regarding each property, "I did not consider it as comparable and I didn't use it." Appellants complain that the court accepted as a verity the testimony of Froning as to which recent sales were comparable and which were not and repudiated the testimony of appellants' witnesses in so far as that testimony differed from Froning's. The exhibits were offered to test Froning's knowledge and his competency as a witness as to the value of appellants' property, or in other words for impeachment purposes. All of the exhibits in question represented sales of land

adjacent to Des Moines within three or four years prior to the instant appraisement and all purchases were for the purpose of improving said properties as residential and business additions to the city.

According to the exhibits:

| | | | | |
|---|---|---|---|---|
| No. 14 | conveyed | 70 | acres for | $ 98,000 |
| No. 15 | conveyed | 12½ | acres for | 50,000 |
| No. 16 | conveyed | 42 | acres for | 85,000 |
| No. 17 | conveyed | 10 | acres for | 22,500 |
| No. 18 | conveyed | 47 | acres for | 531,000 |
| No. 19 | conveyed | 39 | acres for | 23,500 |
| No. 20 | conveyed | 8 | acres for | 19,000 |
| No. 21 | conveyed | 40 | acres for | 80,000 |
| No. 22 | conveyed | 5 | acres for | 20,000 |

Appellants should concede No. 18 involved a highly improved church property and it should not be used as a comparable property. Exhibit No. 22 represented a 5-acre property which appears to have been sold for $4000 per acre. This was hardly comparable to appellants' larger and more remote tract. They were all, however, tracts which the experts recognized as being recently bought for the same purpose, i. e., to plat and improve for residential purposes, with some portions suitable for commercial uses, and all for resale. It was shown the trend is for Des Moines to expand to the north and west and that the city limits were soon to embrace a considerable portion of the property involved here. Appellants' witnesses all described said properties and each property was, by one or more, considered sufficiently similar to be accepted as showing the trend of the market and as having some influence thereon. From a study of the record we are convinced the properties represented by Exhibits No. 18 and No. 22 should not have been considered as sufficiently similar to appellants' to justify admission into evidence, over proper objection, of their sale prices, and such evidence and the exhibits describing them were properly rejected. We are equally of the belief, however, that the opinions of appellants' experts as to other rejected properties should have had favorable consideration, that the evidence offered

regarding them, including the relevant exhibits, should have been admitted on cross-examination and under proper court instructions, and the jury should have been given an opportunity to determine the weight and value of such evidence. The refusal of the court to admit such relevant and competent evidence on cross-examination for the purpose of testing the knowledge and credibility of the witness was an abuse of judicial discretion and was prejudicial error. For this reason we must reverse.

If, as we now hold, such evidence was admissible as substantive evidence of value, the error is not cured by its later admissions for the limited purpose of impeachment.

The fact appellants purchased the property involved here in 1956 for $60,000 and now claim it was, without physical improvement, worth a much larger figure is claimed by the witnesses to be justified by the building trend, the new four-lane Merle Hay highway, the then proposed Younkers-Sears trading center and other conditions causing a demand heretofore unprecedented.

It has been the rule in this state that testimony of experts as to the sale prices of other similar properties in the vicinity may be received on cross-examination to test the knowledge and competency of such experts, and the weight and value of their opinions. Maxwell v. Iowa State Highway Comm., 223 Iowa 159, 165, 271 N.W. 883, 118 A. L. R. 862, 867, and citations, annotation 118 A. L. R. 869, 906, 907; Watkins v. Wabash Railroad Co., 137 Iowa 441, 442, 113 N.W. 924; Hubbell v. City of Des Moines, 166 Iowa 581, 595, 147 N.W. 908; Winkelmans v. The Des Moines Northwestern Railway Co., 62 Iowa 11, 16, 17 N.W. 82; Stotts v. Fairfield, 163 Iowa 726, 738, 739, 145 N.W. 61; Lehman v. Iowa State Highway Comm., 251 Iowa 77, 99 N.W.2d 404.

We have also held that if requested to do so, the court should instruct the jury that the evidence of the prices paid for other properties in the vicinity offered to test the knowledge and competency of witnesses as valuation experts should be considered only for that purpose and should not be considered as substantive proof of the value of the property in litigation.

Maxwell v. Iowa State Highway Comm. and Lehman v. Iowa State Highway Comm., both supra.

II. Appellants assign as error the striking of the testimony of their witness Ashby on direct examination regarding the price paid in a sale he used in arriving at his opinion of the value of appellants' property. This assignment has reference to a tract referred to as follows: "Also the piece inside the city limits on Merle Hay purchased by the water works, 360 by 360 for $15,000." On motion the amount of the purchase price was stricken. The witness had testified this was a comparable sale which he took into consideration in fixing the value of plaintiffs' property. After describing other sales he said, "All of these sales, I have informed myself as to the sales price and can give accurate details. Most of the properties were raw land and most of it subdivision land."

It appeared at that stage the court would continue to rule against the admission on direct examination of evidence of the prices paid for other similar properties. Such evidence would not be admitted as oral testimony nor would the deeds and contract relating thereto be admitted as the best evidence. In other words the court held that proof of the prices actually recently paid for other similar properties in the neighborhood could not be shown even by the best evidence, although opinions based on hearsay and on an examination of the public records would be received. Stated briefly, the question here presented is, was the court in error in refusing the admission as substantive evidence of the testimony and records showing the price paid for a property claimed to be comparable and considered by the witness in determining the value of the appellants' property?

Under the rule heretofore prevailing in Iowa, such evidence would not be admissible. We have been asked by appellants to review our former decisions and to change the rule in this state to conform with the majority rule.

Appellee claims with much force that appellants suffered no damage by the rejection by the court of such evidence since, as appellee claims, appellants managed to get the various prices into evidence on cross-examination of appellee's witness Froning. In its brief appellee states: "The appellant cannot complain of error in the exclusion of said evidence where the information

thereon had been admitted through oral testimony." Citing Trachta v. Iowa State Highway Comm., 249 Iowa 374, 383, 86 N.W.2d 849, 856.

Appellants answer this by calling attention to a part of the cross-examination of Froning shown in the record:

"As to Number 12, I used this property as a comparable. The Exhibit was received. Re Exhibit No. 14, this is not a comparable property and I did not use it. The defendant's attorney objected to Exhibit 14 that it was irrelevant, immaterial and incompetent and that no proper foundation has been laid and that the Exhibit was used for the purpose of cross-examination of the defendant's witness and has no bearing on any issue in the case. The objection was sustained by the Court and it went on to say:

"The Court: *It appears to the Court that it is wholly immaterial,* that this whole thing is subject to strict instruction, which will be given, *and permit these other sales to have very limited bearing on the credibility of the witness.*" (Emphasis supplied.)

Appellants present this argument:

"It should be kept in mind the Court refused to admit the exhibits one after another following questions by appellee's counsel propounded with the Court's permission, asking if the witness considered the properties similar. The jury would not consider counsel's questions as a part of the evidence in the light of the Court's refusal to admit the exhibits and to permit the questions of appellants' counsel to be answered, * * *."

Froning placed the valuation lowest on the property involved here and testified only four properties were similar and that appellants' property was suitable for division into acreage properties principally. When supported by the court's statement that Exhibit No. 14 "is wholly immatérial" and that he would instruct "and permit these other sales to have very limited bearing on the credibility of the witness" it cannot be said appellants are getting a completely fair and impartial trial. The court appeared to give undue weight to Froning's testimony. It was vitally important to appellants' case to detract from the weight and credibility of that testimony if possible. Deeds and contracts, or certified copies of the records thereof, representing

actual transactions should be admitted if relevant to refute or discredit the testimony based on opinion and hearsay. The court was justified, in view of prior decisions of this court, in refusing admission of the written instruments as substantive evidence but in proclaiming that the deed "is wholly immaterial" and he would "permit these other sales to have very limited bearing on the credibility of the witness" would greatly depreciate the value of the evidence in other transactions. It was for the jury to determine the weight and value of the relevant evidence as to the effect it should have on the credibility of the witness.

The appellants have asked us to re-examine our position regarding the admissibility of evidence of recent sales of comparable properties where the evidence shows similarity in all major respects.

Iowa has heretofore followed what is referred to as the Pennsylvania rule as distinguished from the Massachusetts rule with respect to the admissibility in evidence of the prices received upon specific sales of real property. The leading case in this state is Maxwell v. Iowa State Highway Comm., supra. When the opinion was written in that case which adopted the Pennsylvania rule, there were many states following that rule which have since abandoned it in favor of the Massachusetts rule. We do not hold the view that the majority is always right but in this instance, after considering the advantages and disadvantages of each rule, being aided by well considered opinions of learned courts on both sides of the question, we feel it is advisable now to join those who adhere to the Massachusetts rule and we now adopt that rule.

We quote from the annotation, 118 A. L. R. 869, 870, following the case of Maxwell v. Iowa State Highway Comm., supra: "The view is taken in a majority of jurisdictions that evidence of the sale price of other real property is admissible upon the issue of the value of real property where the conditions with respect to the other land and the sale thereof are similar to those involved in the case at bar." Cases from many states following the above rule are cited as are also cases from states holding contra. At page 387 of 174 A. L. R. will be found an extensive annotation listing additional cases sustaining both

views. It is stated this annotation supplements the one above from which we quoted.

For the evidence to be admitted it must be shown that the conditions are similar. "Similar does not mean identical, but having a resemblance; and property may be similar in the sense in which the word is here used though each possesses various points of difference." Forest Preserve Dist. v. Lehmann Estate, Inc., 388 Ill. 416, 428, 58 N.E.2d 538, 544. Size, use, location and character of the land, time, mode and nature of the sale all have a bearing on the admissibility of such evidence.

The futility, if not the absurdity, of the rule under which we now operate is well described in an opinion in a California case before that court adopted the majority rule:

"Everyone recognizes that the first thing a prospective buyer of any kind of property wants to know is what other people have paid for like property in the recent past. * * * But when the valuation of realty is the problem, court and jury are suddenly cut off from informative sources and forced to rely (theoretically) upon opinions based principally upon undisclosed prices of other sales. * * * The main objective of the rule—avoidance of collateral issues—has proved abortive and the procedural aspect of the trial has changed for the worse. * * * Ever since adoption of the rule excluding other sales on direct it has been stated repeatedly that such sales, though the prices are given on cross-examination, are not evidence of value, are to be considered only upon the imputation of lack of information or trustworthiness of the witness. The jurors are so instructed. They know that sales are the basis on which mankind universally values properties; they have many of the pertinent sales before them; when they hear the judge instruct that those sales are not any evidence of value the jurors who are still listening begin to wonder what is the matter with the judge; * * *. That such an instruction must be given is well settled in the law of this state." County of Los Angeles v. Faus, Cal. App., 304 P.2d 257, 269, 270.

On appeal of the above case to the Supreme Court of California the decision was reversed and California in 1957 adopted the majority rule. In County of Los Angeles v. Faus (decided

June 21, 1957), 48 Cal.2d 672, 679, 312 P.2d 680, 684, the court said:

"In taking this position it is recognized that we are over-ruling a line of decisions in this state that announce a contrary rule. The former rule was contrary to logic, unrealistic, and followed in only a few other states. It was merely a rule of procedure. Therefore, it becomes our duty not to follow decisions that we are convinced are erroneous and obsolete." (Citing cases)

That court then taking the view that neither contract nor property rights had vested in either party by reason of its prior decision, stated (page 681 of 42 Cal.2d): "The rule now announced is available to both parties upon a retrial." We make the same pronouncement in this case.

New York, formerly on uncertain ground, is now aligned with those states which hold evidence of sales of comparable properties admissible as substantive proof of the value of the property under condemnation. Village of Lawrence v. Greenwood, 300 N. Y. 231, 90 N.E.2d 53. Utah and Nebraska are among the large number of states now following this rule. State, By and Through its Engineering Comm. v. Peek, 1 Utah 2d 263, 265 P.2d 630; City of Lincoln v. Marshall, 161 Neb. 680, 74 N.W.2d 470; 2 Wigmore on Evidence, Third Ed., section 463, pages 503 to 507.

Much must necessarily be left to the sound discretion of the trial court as to whether or not the conditions are met which make the admissibility rule applicable.

III. It is claimed the court erred in excluding evidence of appellants' witness Paul Neal that the location of the new highway would give ready access to all parts of Des Moines and in commenting prejudicially upon his ruling.

The Constitution of Iowa provides, Article I, section 18: "Private property shall not be taken for public use without just compensation first being made, * * * as soon as the damages shall be assessed by a jury, who shall not take into consideration any advantages that may result to said owner on account of the improvement for which it is taken."

Any statement the new highway would give ready access to all parts of Des Moines would carry the implication that the

improvement for which some of appellants' land was being taken would enhance the value of their property.

Neal testified that as far as this particular property was concerned "several changes have affected it more than the ordinary property. * * * Number 4, the influence of the freeway itself, making it immediately possible to get to any part of Des Moines from there. I am referring to the freeway around the city."

We believe there was no prejudicial error in striking this testimony nor were the remarks of the court regarding his ruling prejudicial. See Trachta v. Iowa State Highway Comm., supra.

IV.  Appellants claim error in the court's refusal to give their Requested Instructions, Nos. 1, 2 and 3, and in giving Instruction No. 9 over timely objection.

Requested Instruction No. 1 was as follows: "The price paid by the plaintiffs for the property involved in these proceedings has been admitted into evidence. You are instructed that such evidence has been admitted and should be considered by you only in connection with, and as bearing upon, the value of the opinions of the various witnesses respectively, in regard to the value of the property in controversy herein and the same should not be considered by you as evidence bearing independently upon the value of the property in controversy at the time in question or as evidence tending to fix the value of the property at the time of its taking by the defendant."

The court did not err in refusing this instruction. Appellants offered and the court admitted into evidence Exhibit No. 9, the deed conveying the premises involved here, with revenue stamps in the amount of sixty-six dollars attached and canceled, indicating a consideration of $60,000. The deed bears date of December 13, 1956. The revenue stamps are as reliably indicative of the consideration as a recited amount would be. The stamps were attached to the deed pursuant to federal statute, the violation of which is a crime. With this reason for affixing the stamps we think the revenue stamps attached to the deed may be said to indicate with reasonable certainty the consideration paid. See Ramming Real Estate Co. v. United States, 8 Cir., Mo., 122 F.2d 892; Ellis v. Ohio Turnpike Comm., Ohio App., 124 N.E.2d 424.

In Nedrow v. Michigan-Wisconsin Pipe Line Co., 245 Iowa 763, 773, 61 N.W.2d 687, 693, we said, "The purchase price paid for land is some evidence of its market value unless the purchase was so remote from the time of condemnation as to have no bearing on its value. Hayes v. Chicago, R. I. & P. Ry. Co., 239 Iowa 149, 30 N.W.2d 743."

It cannot be said with certainty the purchase in February 1956 was too remote from the condemnation in November 1957 to have any bearing on the value of the land when taken by the State.

Without setting out appellants' Requested Instructions Nos. 2 and 3, we think it sufficient to say of No. 2 that the material statements therein are adequately covered by instructions given and the court did not err in refusing to give it. Number 3 referred to Merle Hay Road as a limited access highway the single entry to which was cut off with the land taken. It states "that the defendant has established rules and regulations by virtue of which it exercises discretion in granting rights of access between * * * plaintiffs' remaining property and said Highway No. 64 known as Merle Hay Road." There is no showing No. 64 is a limited access highway in such sense as to cause appellants trouble in this respect and the court properly refused this instruction.

Appellants' objections to Instruction No. 9 are not valid in view of other instructions given.

We have noted carefully the other claimed errors and since they are not likely to arise on a retrial, we deem it unnecessary to give them further consideration.—Reversed and remanded.

LARSON, C. J., and BLISS, GARFIELD, HAYS, PETERSON, and THORNTON, JJ., concur.

OLIVER and THOMPSON, JJ., dissent.