GREAT PLAINS SUPPLY COMPANY v. COUNTY OF GOODHUE.

129 N. W. (2d) 335.

June 26, 1964—No. 39,281.

---

*Doherty, Rumble & Butler, Eugene M. Warlich,* and *Kaner & Devitt,* for appellant.

*Francis H. Watson,* County Attorney, for respondent.

ROGOSHESKE, JUSTICE.

This is an appeal from an order denying petitioner's motion for a new trial after a determination of the full and true value of real property for tax assessment purposes.

Petitioner, Great Plains Supply Company, owns and operates the property as a retail lumberyard in the city of Red Wing. Following a rejection of its claim that the property was assessed for the year 1962 at a valuation greater than its true and full value by the city and county boards of equalization, petitioner sought a determination of its value by the district court pursuant to Minn. St. 278.01. The court found that the true and full value of the property on May 1, 1962, was $46,740 and ordered judgment for the balance of the unpaid taxes computed thereon. From an order denying its motion for a new trial, petitioner appeals.

The petitioner contends that the value determined by the court is not reasonably supported by the evidence because no proper consideration was given to the "undisputed" facts that it purchased the property from the Central Lumber Company on July 26, 1961, for $9,000 in an arm's length transaction between a willing buyer and seller and that the assessor and two witnesses who testified for the county, and whose opinions of value the court adopted, all acknowledged that they did not give any consideration to the purchase price, contrary to the statutes and the mandate of this court as expressed in Schleiff v. County of Freeborn, 231 Minn. 389, 43 N. W. (2d) 265.

Under the statute[1] governing the valuation of real estate for tax purposes, it is clear that initially a duty rests upon the assessor to determine the true and full value of real property by the exercise of judgment after giving consideration and due weight to "every element and factor affecting the market value thereof * * * to the end that all lands similarly located and improved will be assessed upon a uniform

---

[1]Minn. St. 273.11, 272.03, subd. 8, and 273.12.

basis and without discrimination."[2] These statutes specify many of the obvious and important factors which necessarily must be considered in order to arrive at a reasonable judgment of value. Our decisions make clear, however, that the factors specified are suggested but are neither exclusive nor mandatory upon either the assessor or the factfinding court. With respect to the sale price as a measure of the true and full value of property, we declared in Schleiff v. County of Freeborn, 231 Minn. 389, 395, 43 N. W. (2d) 265, 269, that—

"* * * it is not mandatory upon the trier of fact to accept as conclusive the price for which the property involved was sold at a particular time as the sole basis for determining its market value at such time."

Manifestly this construction of the statutes recognizes that the value of improved lands on the open market is affected by a multitude of factors varying in kind and persuasive force from property to property and time to time. Although it is readily conceivable that the negotiated price paid for property at a private sale occurring reasonably near the assessment date between a willing buyer and seller might justifiably be accepted as representing the full and true value, it is equally conceivable that such sale price considered in the light of the circumstances of the sale may be relatively insignificant or justifiably disregarded.[3] The issue is one of fact. Here the trial court concluded that the sale had no significance. Thus, the only question presented on this appeal is whether the evidence reasonably supports the court's determination of value. Unless it is clearly erroneous or manifestly against the weight of the evidence, we are obliged to affirm.[4]

The burden of proof rested upon petitioner to establish overvalua-

---

[2]§ 273.12.

[3]Schleiff v. County of Freeborn, 231 Minn. 389, 43 N. W. (2d) 265; Moran v. Grosse Pointe Township, 317 Mich. 248, 26 N. W. (2d) 763. See, also, Village of Aurora v. Commr. of Taxation, 217 Minn. 64, 14 N. W. (2d) 292; Redfield v. Iowa State Highway Comm. 251 Iowa 332, 99 N. W. (2d) 413, 85 A. L. R. (2d) 96; Alfred J. Sweet, Inc. v. City of Auburn, 134 Me. 28, 180 A. 803, 104 A. L. R. 784.

[4]State v. Oliver Iron Min. Co. 198 Minn. 385, 270 N. W. 609.

tion.[5] The proof offered was by petitioner's choice limited to an effort to persuade the court that the price paid for the property about 9 months before the assessment date was the controlling factor.

This the petitioner failed to do. Petitioner relied principally upon the testimony of two corporate officers who negotiated the sale, one on behalf of the Central Lumber Company (the seller) and one on petitioner's behalf. Their testimony established that the negotiations covered a considerable number of retail lumberyards owned and operated by Central Lumber Company which were being offered for sale in the trade, rather than the open market, in keeping with what later turned out to be a policy of liquidation of the seller's retail business activities. The negotiations culminated in petitioner's purchase of six such yards for a price of $75,000 pursuant to a sales agreement executed on July 26, 1961. In addition to the property in question, the yards were located in the Minnesota communities of Pipestone, Edgerton, and Argyle and in Lemmon, South Dakota, and Grafton, North Dakota. The agreement accorded time for examination of the title to all of the lands to be conveyed and provided that in the event title to any tract was unmarketable, and could not be made so, the agreement nevertheless remained valid and binding as to all remaining tracts except that the seller would refund a stated amount for each tract thereby excluded. The "maximum amount" specified to be refunded for the Red Wing property was $9,000. The sale also included numerous items of personal property, including trucks, yard and office equipment, as well as the building-materials inventory. The sale price for the latter was not included in the total price but was to be separately computed at book value for each yard as of July 22, 1961, admittedly advantageous to the seller. The stated value of the personal property of the Red Wing yard was $200 and the value of two trucks also sold was $800. A number of personal property items listed in the agreement were given no value; all such property, however, was included in the total sale price. Since the sale, petitioner has carried on the operation of the lumberyard and, except for painting the building, has not changed or improved the property in any way. No attempt was made to prove the

---

[5]Kalscheuer v. State, 214 Minn. 441, 8 N. W. (2d) 624.

market value of each yard included in the deal except that the witnesses testified that each yard was separately considered and individually negotiated; that the Red Wing yard was not a profitable operation; that the building, although sound and in fairly good condition, was old and functionally obsolete and not readily adaptable or desirably located for the operation of a modern retail lumberyard. Each witness expressed the opinion that the building had only "nominal value" and that the stated refund price of $9,000 in fact represented the fair market value of the property.[6]

In addition to the assessor, the county called two value witnesses. The qualifications of these witnesses were unchallenged and it appears agreed, as the court declared, that they were "competent and experienced" men in the field of land appraisals. The assessor and one of the value witnesses separately evaluated the land and building and their opinions were adopted by the court although in direct conflict with the opinions expressed by petitioner's witnesses. The other witness for the county valued the land and building together at a slightly lower figure than that adopted by the court. It is undisputed that the witnesses for the county were aware of the sale price, but each one declared in substance that such price, when considered in the light of numerous other factors affecting the value of the property, was so ridiculously low that it could be accorded no weight as a factor reflecting the value of the property in the open market.

In an extensive memorandum the court fully explained the basis for rejecting petitioner's contention. No purpose would appear to be served in detailing the testimony of the county's value witnesses. Suffice it to say that their testimony provided the basis for the conclusion of the court that the circumstances of the sale were such that the stated price

---

[6]Petitioner's witnesses also testified that during the negotiations the seller offered the property for sale to a party who desired it for use as a medical clinic for $12,000 and that such third party made an offer of $10,000 to petitioner after the sale, which was refused. It is difficult to see how this evidence added any persuasive weight to petitioner's contention as the third party was not called as a witness and the inferences suggested are not only conflicting but wholly speculative.

was neither controlling nor a significant factor. It is clear that a sufficient basis exists for the court to treat the stated sale price as inconsequential when it is considered that this sale included other real and personal properties, the market value of which was not established by proof; that the value of the property in question as stated in the sale contract was the refund value and not the price for which the property was sold singly on the open market; that the price was predicated on the use for which the property was purchased and not on its highest and best use; that there may exist many business considerations which would motivate a seller to dispose of a valuable asset at a bargain; that the undisputed testimony gave a higher value for lands comparable in character, quality, and location than the sale price of the property in question.

It follows that the evidence is sufficient to sustain the court's determination of the value of the property.

Affirmed.