Peter P. BOORAS and Angeline P. Booras, Appellants,

v.

IOWA STATE HIGHWAY COMMISSION For the Use and Benefit of the STATE of Iowa, and William A. Strout, Sheriff of Scott County, Iowa, Appellees.

No. 55458.

Supreme Court of Iowa.

May 23, 1973.

——◆——

Harold C. Lounsberry, Davenport, for appellants.

Richard C. Turner, Atty. Gen., Asher E. Schroeder, Sp. Asst. Atty. Gen., and Elliott R. McDonald, Jr., Davenport, for appellees.

HARRIS, Justice.

The Iowa State Highway Commission (the commission) condemned land owned by Peter P. and Angeline P. Booras (plaintiffs) in connection with a highway project in Battendorf, Iowa. On appeal to district court from the award of the condemnation commission the jury fixed plaintiffs' damages at $23,500. The trial court thereafter sustained the commission's motion for a new trial or remittitur, granting a new trial unless plaintiff agreed to remit the amount of award exceeding $21,000. Plaintiffs appeal. We affirm in part, reverse in part and remand with directions.

Plaintiffs purchased the property in April 1960 for $21,000. It was condemned in its entirety in this proceeding September 3, 1968. In sustaining the motion for new trial the trial court agreed it had erred in all of several respects claimed. They fall into the categories treated in the following divisions.

I. Evidence of two sales of property thought to be similar to that in question was admitted and later stricken. The two sales occurred subsequent to the date of condemnation. Plaintiffs' expert appraiser testified over objection of sales occurring May 1, 1969 and September 22, 1970 which he considered to be comparable. More evidence of these sales was later received during plaintiffs' cross-examination of the commission's appraisal witnesses. At the close of all evidence the trial court sus-

tained the commission's motion to strike all evidence of the sales occurring subsequent to the date of condemnation. After the motion was sustained the jury was instructed accordingly. The commission now argues it was error to place the evidence before the jury and the error was not effectively cured when the evidence was stricken.

Evidence of comparable sales was admitted only on a limited basis in Iowa prior to our holding in the first Redfield case, Redfield v. Iowa State Highway Commission, 251 Iowa 332, 99 N.W.2d 413. That opinion extended the proper use of comparable sales from that of a mere tool testing the credibility of the witness. Thereafter such evidence was allowed as substantive proof of value. Separate but related questions have existed both before and after the first Redfield case as to sales of comparable property occurring after the date of condemnation.

 It is error to admit evidence of a comparable sale where the land sold had been enhanced in value by the contemplated improvement. Redfield v. Iowa State Highway Commission, 252 Iowa 1256, 110 N.W.2d 397; Iowa Development Co. v. Iowa State Highway Commission, 252 Iowa 978, 108 N.W.2d 487; 27 Am.Jur.2d, Eminent Domain, section 430, page 335. We are now presented with a derivative question. Is evidence of a *subsequent* comparable sale always inadmissible or does it merely become inadmissible when enhancement is shown?

We have had occasion to describe the foundation required for evidence of a comparable sale on a number of occasions. We have never suggested that evidence of comparable sales can only be admitted if the sales occurred prior to the date of condemnation. In the first Redfield case we said in adopting the Massachusetts rule:

" * * * For the evidence to be admitted it must be shown that the conditions are similar. 'Similar does not mean identical, but having a resemblance; and property may be similar in the sense in which

the word is here used though each possess various points of difference.' Forest Preserve Dist. of Cook County v. Lehmann Estate, Inc., 388 Ill. 416, 58 N.E.2d 538, 544. Size, use, location and character of the land, time, mode and nature of the sale all have a bearing on the admissibility of such evidence.

" * * *.

"Much must necessarily be left to the sound discretion of the trial court as to whether or not the conditions are met which make the admissability rule applicable." Redfield v. Iowa State Highway Commission, 251 Iowa 332, 341–342, 99 N.W.2d 413, 418–419.

Our later holdings have been in accord. In re Primary Road No. Iowa 141, 255 Iowa 711, 124 N.W.2d 141; Belle v. Iowa State Highway Commission, 256 Iowa 43, 126 N.W.2d 311; Martinson v. Iowa State Highway Commission, 257 Iowa 687, 134 N.W.2d 340; Jones v. Iowa State Highway Commission, 259 Iowa 616, 144 N.W.2d 277; Linge v. Iowa State Highway Commission, 260 Iowa 1226, 150 N.W.2d 642; Crozier v. Iowa-Illinois Gas & Electric Co., 165 N.W.2d 833 (Iowa 1969); Socony Vacuum Oil Co. v. State, 170 N.W.2d 378 (Iowa 1969); Perry v. Iowa State Highway Commission, 180 N.W.2d 417 (Iowa 1970).

■ No challenge is made as to the foundation for the sales claimed here to be comparable. There is some claim, though the record is devoid of any showing, that the property sold had been enhanced in value by the proposed improvement. The trial court found no evidence of enhancement. It later struck evidence of the subsequent comparable sales on a sole and different ground. The court sustained the condemnor's motion, striking the evidence " * * * for the reason that any sales occurring after the date of condemnation in this case, September 4, 1968, were after the date fixed by a law for the consideration of the assessment of damages, and it is necessary that the property be taken as it was on that date, with all of the same information and facts which were available to the Condemnation Commission at the time they entered their Order fixing the damages that they, in effect, thought should be allowed." We hold the trial court was right in originally admitting the evidence and was in error in later striking it. See 1 Orgel, Valuation Under Eminent Domain, section 137 (2d Ed. 1953).

■ Of course any such enhancement would have made evidence of the sales inadmissible. However evidence in this record negatives any claim of enhancement. The expert appraisers denied there was any enhancement. The condemnor concedes the objector has the burden of proof to show evidence of an otherwise comparable sale is not admissible because the property is enhanced by the proposed project. Redfield v. Iowa State Highway Commission (second case), 252 Iowa 1256, 110 N.W.2d 397; Socony Vacuum Oil Co. v. State, 170 N.W.2d 378 (Iowa 1969). The condemnor wholly failed in its burden to show enhancement.

■ II. In any event the trial court removed the question from the case when the evidence of subsequent sales was later stricken. "If evidence is improperly admitted but is later withdrawn with a cautionary statement to the jury to disregard it, there is no error except in extreme instances where the prejudicial effect would probably remain to influence the verdict despite its exclusion. (Citations)." State v. Coffee, 182 N.W.2d 390, 392 (Iowa 1970). See also 89 C.J.S. Trial § 661, page 504. This was not an "extreme instance."

■ III. The trial court determined there was no evidence to support an award in excess of $21,000, the amount paid for the property. This was error.

J. T. Willits, one of the commission's appraisal witnesses, testified the property increased $2500 in value from 1965 to 1968. This alone is sufficient to support the jury award when considered with the price actually paid for the property.

At the conclusion of his testimony in chief William Bruce Dunlop, plaintiffs' appraisal witness, testified without objection " * * * that based on his experience and education, he had been able to arrive at an opinion of the market value of the Booras property and that as of September 4, 1968 the market value was $5.50 a square foot, or for a total of 5000 square feet, the value would be $27,500." This testimony remained unaffected by any ruling striking his earlier testimony of specific comparable sales. Even if the substantive evidence of the comparable sales had been properly stricken the opinion of Mr. Dunlop based on his experience and education and received into evidence without objection would have been ample to support the jury verdict.

■ IV. As its first instruction to the jury the trial court gave instruction 14.2 of the uniform jury instructions of the Iowa State Bar Association. That instruction includes the following third paragraph: "The law provides that a fair and just compensation means the payment of such a sum of money to the owner of the property taken or appropriated that will serve to make the owner whole."

The commission objected to the instruction in this case, claiming it had the effect of requiring a minimal award of the $21,000 plaintiffs had paid for the property. The commission offered evidence the fair and reasonable market value was less than $21,-000. We do not read the instruction to prohibit an award of less than $21,000.

■ Moreover an individual instruction should not be interpreted out of context, but by reading together all instructions given in the case. State v. Wallin, 195 N.W.2d 95 (Iowa 1972). Instructions 5, 6, 7 and 9 as given in this case all treated the subject of just compensation and fair and reasonable market value. Taken as a whole they accurately describe the proper award to be given. There was no error in the instructions.

V. As previously indicated the trial court wrongly determined it had committed error and thereafter found the "error" had not been cured by being stricken from the record. It then determined it should be cured by granting a remittitur. Remittiturs have generally been held to be unavailable in eminent domain.

"Generally [in condemnation matters] * * * in the absence of express statutory authority the trial court is without power to increase or diminish the amount of the award as determined by the jury or by commissioners. In condemnation proceedings the trial judge has not the power of control over the proceedings and verdicts possessed by the trial judge in common-law actions. He may, of course, confirm or set aside the award reported to him, but he cannot give binding instructions, * * *. Under our constitutional provisions if the judge reaches the conclusion that the award is excessive, he may not himself reduce the award and as so reduced confirm it. Under such circumstances he should refuse to confirm, and order a new trial. It is the constitutional right of an owner in most jurisdictions not only to receive just compensation for the property taken from him, but also to have the amount of that compensation awarded to him by a jury. If the court changes the amount of the verdict in the absence and without the consent of the jury or the parties, there is a new verdict rendered, not by a jury, but by a court acting without a jury. This is violative of the rights of the owner because, in the exercise of the power of eminent domain, which takes the property of an owner from him without his consent, the limitations prescribed by the constitution should be strictly observed, and the statutes passed in pursuance thereof should be strictly complied with. The fact that the verdict does not conform to the evidence, or is rendered through mistake and inadvertence, is a cause for setting aside the verdict, or, if not discovered until after judgment is entered, is a cause for setting aside both the verdict and judgment, but it does not give the court power to correct the verdict.

The verdict is the jury's, not the court's and the power of the court in such cases is limited to seeing that the jury returns a verdict correct in form and substance. It may not, after the verdict has been returned and the jury discharged, change it, over the objections of either of the parties, in matters of substance.

"The same limitation has been applied to the power of an appellate court, although there is authority to the contrary. * * *." Nichols on Eminent Domain, Vol. V, section 17.2. See also 27 Am.Jur.2d, Eminent Domain, section 447, page 361.

Notwithstanding the view just expressed we considered claims of excessiveness in condemnation awards and affirmed the amount fixed by the trier of facts in Nelson v. Iowa State Highway Commission, 253 Iowa 1248, 115 N.W.2d 695; Perry v. Iowa State Highway Commission, 180 N.W.2d 417 (Iowa 1970); and in Van Horn v. Iowa Public Service Co., 182 N.W.2d 365 (Iowa 1970). We considered such a claim and affirmed on condition of a remittitur in Sonntag v. Iowa Public Service Co., 180 N.W. 2d 124 (Iowa 1970).

■ We now hold a remittitur is not appropriate in condemnation cases. The trial court must either enter judgment in the amount fixed by the jury or in a proper case, order a new trial. Any inference or holding to the contrary in Sonntag v. Iowa Public Service Co., supra, is overruled.

The judgment of the trial court in ordering a remittitur must be reversed and the verdict of the jury reinstated.

Reversed and remanded with directions.

All Justices concur except LeGRAND, J., who concurs specially.

LeGRAND, Justice (concurring specially).

I concur in the result on the basis of what the majority says in Division III. However, I cannot agree with Division V, and I therefore dissent from that part of the opinion.

In the first place the issue as to whether the granting of a remittitur in condemnation cases is constitutionally permissible was not in this case until the majority put it there. I do not think we should adopt this sua sponte approach on such an important matter without first permitting the litigant who is thereby deprived of a trial court victory an opportunity to be heard on the question. Anything less waters down his right to an effective appeal.

Be that as it may, I am more concerned because I believe the result is unsound. It is apparently based on the premise—although not so expressed—that Article I, section 18, of the Constitution of Iowa forbids any · remittitur in condemnation cases by saying "damages shall be assesssed by a jury."

The authority cited to support the view that this means there can be no remittitur is unpersuasive. The most it shows is that *some* courts take such a view under similar constitutional language. Iowa, on the contrary, has never recognized that doctrine. Until now that provision has been taken to mean the legislature may not deprive one whose property is to be appropriated for public use of a trial by jury. However, that trial should then be conducted by the rules which apply to all jury trials. I cannot believe the constitution meant to invest a condemnation jury with plenary power not possessed by other juries.

Another fallacy in the majority view is its rejection of the judicial right to modify a verdict and its simultaneous recognition that such a verdict may be set aside entirely. If courts are without authority to do one, why aren't they equally inhibited as to the other?

As recently as 1970, we approved without a dissenting vote—although there was a dissent on other grounds—the right to grant a remittitur. Sonntag v. Iowa Public Service Co., 180 N.W.2d 124, 126. Other cases mentioned there recognize that prin-

ciple also. Now the majority overrules Sonntag because between that date and this it has—somehow—become unconstitutional to remit part of a condemnation verdict.

I disagree. I think the Sonntag case was right then and that it still is. I would reverse solely because the record in this case does not support a remittitur.