FRANK JONES et ux., appellees, v. IOWA STATE HIGHWAY
COMMISSION, acting for and in behalf of State of Iowa,
appellant.

No. 51958.

July 14, 1966.

Rehearing Denied September 23, 1966.

Lawrence F. Scalise, Attorney General, Raymond T. Walton, Special Assistant Attorney General, of Ames, and Fisher & Pickens, of Cedar Rapids, for appellant.

John D. Randall, of Cedar Rapids, for appellees.

Thornton, J.—Defendant Highway Commission condemned 12.7 acres together with easements of 7.1 acres for borrow and two smaller easements to relocate tile and to remove a barn and garage from plaintiffs' land actually taken, for the purpose of widening Primary Highway No. 149 to make it a four-lane highway for two miles southwesterly from its intersection with U. S. Highway No. 30 and to relocate two streets that intersected Highway No. 149.

The condemnation commissioners awarded plaintiffs $48,500. They appealed to the district court, the verdict of the jury there was $68,750. Defendant commission appeals to us urging error in the admission of evidence, in the instructions and in allowing plaintiffs to amend.

Plaintiffs' land is a forty which has been farmed by them in connection with an adjoining rented forty for years. Plaintiffs' forty is actually 36 acres because of land taken for road purposes. The land is in Cedar Rapids. It was annexed in 1961 and was automatically zoned R-1 for residential purposes upon being annexed. It has always been used as farmland. Before the condemnation on January 29, 1963, Edgewood Road, a north and south street, ran along the east side of plaintiffs' land, Wilson Avenue, an east and west street ran along the south side of plaintiffs' land. Highway 149 ran through the southeasterly corner of plaintiffs' land in a northeast-southwest direction.

The center line of old 149 intersected plaintiffs' east line about 547 feet north of the southeast corner of plaintiffs' land and the south line about 561 feet west of the southeast corner. This left a one and one-half acre triangular tract of plaintiffs' land on the southeast side of 149, the major portion on the northwest side. Plaintiffs had about 800 feet frontage on the northwest side and about 300 feet frontage on the southeast side of 149. The 12.7 acres to be condemned outright includes the one and one-half acre tract and a strip of land on the southeast side of plaintiffs' land from a little west of the northeast corner southwesterly to Wilson Avenue. Plaintiffs' home, barn and garage are in the condemned area. The borrow area is 7.1 acres of high ground near the center of plaintiffs' land. The new lane to be added to No. 149 and relocated Edgewood Road and Wilson Avenue are located in the condemned area. Edgewood will run in a southwesterly direction and curve to the southeast, Wilson in an easterly direction. It will run into Edgewood and both intersect 149 at one place rather than two as formerly. Plaintiffs will no longer have frontage on No. 149 but will front only on the two relocated streets.

I. The first error urged by defendant is that evidence of the amount paid by the condemnor to other condemnees in the same project is inadmissible. We have uniformly so held, Basch v. Iowa Power and Light Co., 250 Iowa 976, 979, 95 N.W.2d 714, 717; Wilson v. Fleming, 239 Iowa 718, 728, 31 N.W.2d 393; and Simons v. Mason City & Fort Dodge Railroad Co., 128 Iowa 139, 150, 151, 103 N.W. 129. See also United States v. Foster, 131 F.2d 3 (8 Cir. 1942), and annotations, 85 A. L. R.2d 163. The reason such evidence is inadmissible and held to be unduly prejudicial is, even in light of Redfield v. Iowa State Highway Commission, 251 Iowa 332, 99 N.W.2d 413, 85 A. L. R.2d 96, holding the sale price of comparable property may be shown as substantive evidence of value, the sale is not a sale between a willing buyer and seller. The price paid in such instance is the result of a compromise between the condemnor who is forced to acquire the land to complete the project and the condemnee whose land is going to be taken in any event. Neither party is free.

The plaintiffs urge the error in the admission of such evidence is without prejudice in this case. In some cases it might be true that such evidence would not be prejudicial. In this case we cannot so view the evidence. In some instances the amount per acre shown was less than the per acre allowance by the jury here, but the nature of the properties involved and the improvements taken could readily account for the difference. In others a larger amount per acre was shown, such is clearly prejudicial.

Plaintiffs also contend the price shown in the deeds and by way of answer to interrogatories was not the actual amount paid by the defendant for such other land in the project. Plaintiffs contend the actual prices paid are shown in plats of each tract made and recorded by defendant. Plaintiffs claim the amount shown on the deeds must have been the value placed on the property by defendant's appraisers and constituted an admission by defendant. This type of evidence, value placed on other land in the same project by condemnor's appraiser, is exactly what was held inadmissible in Wilson v. Fleming, 239 Iowa 718, 728, 31 N.W.2d 393. The error in admitting testimony of the price paid by the condemnor for other land in the same project or the amount fixed by its appraisers as the value of other land in the same project is prejudicial and requires a reversal.

II. In connection with the evidence bearing on sales in the same project defendant urges Instruction No. 9 on comparable sales was erroneous. Its principal contention that the sales to be considered must be between a willing buyer and seller is cured when the evidence complained of is excluded.

III. Plaintiffs offered into evidence the entire probate file and the return of the inheritance tax appraisers in the estate of a deceased landowner across No. 149 from plaintiffs. It was error to receive such evidence, the entire file was immaterial, the return of the appraisers clearly hearsay as to the value of that decedent's property. It is merely what someone else said about it at another time and place. Wigmore's Code of Evidence, section 1317, page 260; In re Estate of Plumb, 256 Iowa 938, 945, 129 N.W.2d 630, 635; and Dohse v. Market

Mens Mutual Insurance Co., 253 Iowa 1186, 1191, 115 N.W.2d 844. It was not a comparable sale.

IV. Plaintiffs' experts were allowed to testify on direct examination to separate valuations they placed on separate portions of the condemned land. Defendant urges such is reversible error. It relies on Hoeft v. State, 221 Iowa 694, 266 N.W. 571, 104 A. L. R. 1008; Dean v. State, 211 Iowa 143, 233 N.W. 36; Welton v. Iowa State Highway Commission, 211 Iowa 625, 233 N.W. 876; and Lough v. The Minneapolis & St. Louis Railroad Co., 116 Iowa 31, 89 N.W. 77.

These cases hold either party is entitled to a before valuation of the entire tract of the condemnee affected by the condemnation where such tract has been used as a unit. The reason for the rule in the above authorities is that such testimony in effect gives the jury two measures of damages. And where, as here, the valuation experts also give a total valuation of the before value of the whole tract, we said in Lough v. The Minneapolis & St. Louis Railroad Co., supra, the error was not cured. In the Lough case the valuation experts giving such testimony were the condemnor's witnesses, the reverse is true here. Plaintiffs' claim here, as in the Lough case, was that this error was without prejudice. These plaintiffs base their claim of no prejudice however on the further claim one of defendant's valuation experts used the same method. It is only true the defendant's expert used the same method in the sense that he examined all of plaintiffs' land and took into consideration the highest and best use of particular parcels of plaintiffs' land in reaching his before valuation. He did not on direct examination place separate valuations on the separate parcels. That he considered the separate parcels was brought out on cross-examination.

We are of the view the objections to the questions calling for separate valuations on the separate parcels should have been sustained. In this case plaintiffs had always farmed the land as a unit. There was no contrary suggestion.

The measure of damages for a partial taking is the difference in the fair market value of the subject property immediately before and immediately after condemnation. The

fair market value of land is the price a willing buyer under no compulsion to buy would pay and a willing seller under no compulsion to sell would accept. A condemnee is damaged to the extent his property is diminished in value by the condemnation. Martinson v. Iowa State Highway Commission, 257 Iowa 687, 691, 134 N.W.2d 340, 342. This is the ultimate fact to be determined by the jury. Strict adherence to the rule will assure the jury is not misled as to the fact to be determined and add the valuations of separate parcels to the detriment of either party. This does not mean, however, a valuation expert may not accredit his testimony by showing that separate parcels are reasonably adaptable to specific uses. Ranck v. City of Cedar Rapids, 134 Iowa 563, 111 N.W. 1027. Nor does it mean he may not be cross-examined as to the valuation he placed on such parcels to test his credibility, knowledge and basis of opinion. Welton v. Iowa State Highway Commission, supra, at page 632 of 211 Iowa, page 881 of 233 N.W.

V. Defendant contends the issue of loss of access should not have been submitted because of the insufficiency of the evidence and that in any event the instruction given was inadequate and prejudicial to defendant.

It is true plaintiffs' evidence does not show any loss of access previously used. Defendant, however, introduced testimony of the Director of Public Works of Cedar Rapids. He testified there was a written agreement between the city of Cedar Rapids and defendant with respect to Edgewood Road and Wilson Avenue in connection with this Highway 149 project and, "The use and the access right on these streets will be a matter for action by the City Council." He further testified maintenance and control are in the city council after construction, and:

"Access control is also up to the city. If Mr. and Mrs. Frank Jones want an entrance from their property onto the relocated Edgewood Road or if they want an entrance off of the relocated Wilson Avenue, they must come to the Engineering Department of the City of Cedar Rapids."

The only fair inference from the foregoing is that plaintiffs were landlocked after the condemnation. It is clear their front-

age on Highway No. 149 was gone as well as their right of access thereto, if any. And if they want access to the streets they must go to the city council of Cedar Rapids. As this stands plaintiffs are forced to another action to determine whether they will have reasonable and convenient access. Neither party has briefed or argued the question of whether the two authorities, the city and highway commission, can agree between themselves in such a manner so the one condemning the land can be free from damage because the other has control of access. We think on principle this is untenable. See Iowa State Highway Commission v. Smith, 248 Iowa 869, 82 N.W.2d 755, 73 A. L. R.2d 680, an action by the commission for a declaratory judgment seeking a declaration that limitations established by the commission and city upon access to the properties and prohibition of vehicular crossings except at designated points do not constitute "taking" property for which compensation must be made under Article I, section 18, Iowa Constitution.

From the Smith case it is clear an abutting property owner cannot be deprived of all access by public authorities without just compensation, such is the taking of property. The right to access may be reasonably regulated to strike a balance between public and private interests. The landowner is not entitled to access at any and all points. If he has reasonable and convenient access to his property and his means of ingress and egress are not substantially interfered with by the public he has no cause for complaint. No hard-and-fast rule can be stated as to whether an abutting owner has been denied access that is reasonable and convenient. In most instances the question is one of fact, not of law, and its determination depends largely upon the evidence in the particular case. Also in Smith after approving and modifying certain actions of the commission and city we said at page 878 of 248 Iowa, page 761 of 82 N.W.2d, in connection with a dwelling:

"They have no means of ingress or egress except over the driveways between the filling station and the highway. There is no access to any other street. We think a driveway should be permitted for this dwelling from Hubbell Avenue or, in the absence thereof, just compensation must be paid for the taking of the right of access thereto."

And in connection with a residential site we said. at page 879 of 248 Iowa, page 761 of 82 N.W.2d:

"We think a driveway should be permitted for this residential site or, in the absence thereof, just compensation should be paid for taking the right of access thereto.

"If the commission and defendants cannot agree upon the amount of compensation, condemnation proceedings will be necessary."

Implicit in the last sentence is the Highway Commission may be forced to condemn the right of access. It follows in the present proceedings the defendant-commission should be held liable for damage if in fact reasonable and convenient access is denied plaintiffs.

The above does not answer the rights of plaintiffs to access on No. 149. There was no order or resolution of the commission in relation to controlling access on No. 149 in evidence. The oral testimony of a highway employee is to the effect No. 149 was designated as a controlled-access highway in 1958 and since that time it would be necessary for an abutting landowner to make application to the commission and to the city (the land was annexed in 1961) to obtain access thereto. There was no objection to this testimony. The record shows plaintiffs have never used access to No. 149 before its designation as a controlled-access highway nor since. And the only fair inference is they have not applied for access. Under these circumstances we think it follows from the Smith case, supra, Warren v. Iowa State Highway Commission, 250 Iowa 473, 93 N.W.2d 60, and Lehman v. Iowa State Highway Commission, 251 Iowa 77, 99 N.W.2d 404, plaintiffs have no compensable damage for the taking of their access to No. 149 if in fact they are allowed reasonable and convenient access to their land from an abutting street.

It is a fair inference from the pictures in evidence plaintiffs had access to Edgewood Road before the condemnation. As the record stands plaintiffs are landlocked, from this the issue of denial of reasonable and convenient access was proper for the jury.

In connection with the instruction on reasonable and convenient access we may say that it is proper to point out

reasonable and convenient access does not mean unlimited access at all points on the street or highway, the public authorities may regulate access in the interest of public safety by reasonable regulation and it is a substantial or material impairment or interference with the right of access that entitles the abutting owner to damages. Wilson v. Iowa State Highway Commission, 249 Iowa 994, 90 N.W.2d 161; and Belle v. Iowa State Highway Commission, 256 Iowa 43, 126 N.W.2d 311.

VI. The trial court instructed on "a possibility in the future" of obtaining a change in the zoning of plaintiffs' property. Defendant urges there was insufficient evidence to warrant the submitting of an instruction on a change in zoning and that such instruction should be limited to a probability of such change in the near future.

The record shows plaintiffs' land was zoned R-1 for single family dwellings upon being annexed to Cedar Rapids in 1961. The land is located within three eighths of a mile from the intersection of U. S. No. 30 and No. 149. The intersection is zoned commercial. There are properties so zoned on each side of No. 149 southwest toward plaintiffs' land. To the north and west of plaintiffs and within one-fourth to one-half mile there is a large commercial area. The property to the north within 200 feet is zoned commercial. This was a nonconforming use. There is property used for trailer sales north and east of plaintiffs on No. 149 that was zoned commercial by the city council contrary to the recommendation of the planning commission. Plaintiffs' valuation experts, real-estate men of long experience, testified to the adaptability of the land for commercial and multiple housing uses. They also opined the land could be rezoned for such purposes. One of defendant's experts testified the land abutting No. 149 had commercial potential though he considered the highest and best use residential. The foregoing is sufficient to warrant submitting a proper instruction. Hall v. City of West Des Moines, 245 Iowa 458, 468, 62 N.W.2d 734, 740.

Plaintiffs are entitled to show any factors that will impress a willing buyer in purchasing the land. Johnson County

Broadcasting Corporation v. Iowa State Highway Commission, 256 Iowa 1251, 1253, 130 N.W.2d 707, 708, 709.

The question is whether the land is so situated that a willing buyer would consider the probability of a change in zoning in the near future in arriving at a price for the land.

The instruction was in error to the extent it allowed the jury to consider a possibility of change in the zoning in the future. In this regard the trial court was undoubtedly misled by Hall v. City of West Des Moines, supra, wherein we used the word possibility. An examination of the authorities considering the question discloses the correct rule is that such instruction should be limited to a reasonable probability of a change in the zoning in the near future. Kaperonis v. Iowa State Highway Commission, 251 Iowa 39, 99 N.W.2d 284; Hietpas v. State, 24 Wis.2d 650, 130 N.W.2d 248; State v. Pahl, 254 Minn. 349, 95 N.W.2d 85; Board of Commissioners of State Institutions v. Tallahassee Bank and Trust Co., 108 So.2d 74 (Fla. App. 1958); State ex rel. Morrison v. McMinn, 88 Ariz. 261, 355 P.2d 900; City of Euclid v. Lakeshore Company, 102 Ohio App. 96, 133 N.E.2d 372; City of Austin v. Cannizzo, 153 Tex. 324, 267 S.W.2d 808; and State by State Highway Comr. v. Gorga, 26 N. J. 113, 138 A.2d 833.

VII. Defendant's complaint of Instruction No. 6 is hypertechnical, and allowing plaintiffs to amend their petition was within the sound discretion of the trial court. Brown v. Guiter, 256 Iowa 671, 128 N.W.2d 896.

The case is reversed and remanded for a new trial.—Reversed and remanded.

All Justices concur.